UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80129-Cr-RYSKAMP/HOPKINS

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

ERNEST JOLLY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND CONFESSIONS (DE 19)

THIS CAUSE is before the Court on an order of reference from Senior United States District Court Judge Kenneth L. Ryskamp for disposition of all pretrial criminal motions. (DE 10). Before the Court is Defendant's Motion to Suppress Evidence and Confession (DE 19), filed December 10, 2008. The Government filed a written response to this motion on December 22, 2008. (DE 24). After the Government's Motion to Continue the Hearing was granted, this Court held an evidentiary hearing on Defendant's motion on December 29, 2008. (DEs 22, 23, 27) These matters are now ripe for review.

## BACKGROUND and FINDINGS OF FACT

The defendant challenges the initial *Terry* stop of his vehicle as being

without reasonable suspicion, the questions during the *Terry* stop for violating

*Miranda*, and the subsequent search of the vehicle as lacking probable cause. (DEs

19, 27).  The Defendant also requests that his statements be suppressed as fruits of

the poisonous tree.  *Id.*

      An evidentiary hearing on the instant motion was held in the Southern

District of Florida at West Palm Beach, on December 29, 2008.  The Government

was represented by AUSA Robert Waters and the Defendant was represented by

Assistant Federal Public Defender Jonathan Pinoli. West Palm Beach Police

Officers Derrick Walker and Wilpidio Pinto testified at the hearing. (DE 27).  The

following are findings of fact.

      Officer Walker has been a police officer with the West Palm Beach Police

Department for over nineteen years.  He has been involved in over five hundred

street level crack cocaine investigations.

      On March 19, 2008, Officer Walker was conducting a surveillance of the

1100 block of Grant Street in West Palm Beach, a high drug crime area.  The 1100

block of Grant Street dead ends at the west end of the street.  At about 10:20 or

11:20 a.m. on March 19, Officer Walker observed a white Saturn SUV drive to the

end of the dead end street, make a U-turn and park.  Officer Walker was observing

through high power binoculars from three hundred feet away across a canal in an

unmarked vehicle.  Officer Pinto, an eighteen year police veteran, was in a marked unit located a couple of blocks away.

Approximate four or five minutes later a tan and blue Oldsmobile came down the street and parked across from the white Saturn.  The driver of the Oldsmobile got out, looked around, and then walked over to the white Saturn. They had a short conversation, and the Oldsmobile driver gave the occupant of the white Saturn a clear, plastic baggie.

Officer Walker also testified that he saw the white Saturn driver, the Defendant, give the Oldsmobile driver some money, and Officer Walker quickly added that he could not tell the denominations. (DE 27, p. 12).  He had failed to note in his report that he had seen currency transferred, acknowledged in his testimony that it was an important omission, but attempted to explain it away by saying that he could not see denominations. (DE 27, pgs. 23-26).  Both Officers Walker and Pinto testified that Officer Walker had radioed Officer Pinto to tell him that he had seen a transfer of a clear, plastic baggie, with no mention of any currency. (DE 27, pgs. 14, 40).  This Court finds that the omissions from the radio transmission and Officer Walker's report were significant.  It is difficult to imagine that the baggie merited mention while currency did not.  This Court further finds that Officer Walker's attempt to rationalize the omission from his report by

3

explaining that he could not see the denominations was unconvincing.  After all, he referenced the baggie even though he had not been able to discern any drugs inside.  This Court finds that Officer Walker did not see any currency.

The Oldsmobile driver then walked back to his car and sat in it for a while and the defendant left. Officer Walker radioed Officer Pinto that he had seen a black male exit the Oldsmobile, approach the white Saturn SUV, hand a black male a clear plastic bag, and that it was a possible drug transaction.  Officer Walker advised that the Saturn left the area.  Officer Pinto followed the Saturn, but because of traffic had to take a parallel route to catch up with it about seven blocks away. Officer Pinto pulled over the Defendant's vehicle and asked for his license and registration.  As the Defendant handed over his license and his rental agreement, Officer Pinto noticed that his hands were shaking.

Officer Pinto asked the Defendant if he supported the war on drugs.  The Defendant replied that he did.  Officer Pinto then asked him if he did drugs, at which point the Defendant looked startled.  The Defendant did not answer immediately, started sweating profusely even though the car was air conditioned, his hands were shaking more, and his eyes were darting around.  Officer Pinto, who was a veteran of numerous traffic stops, believed that the Defendant's reaction was abnormal.  When Officer Pinto asked the Defendant again if he did drugs, the

Defendant replied that he did not.

While the officer was questioning him, the Defendant was attempting to push something underneath the armrest of the vehicle with his right hand.  Officer Pinto and another officer who had joined him took the license and rental agreement and walked back to the rear of the vehicle.  Officer Pinto then walked around to the passenger window and observed the Defendant trying to stuff a clear plastic baggie underneath the armrest.

Officer Pinto then ordered the Defendant out of the vehicle and looked into the open door of the vehicle where he saw an inch of the bag sticking out.  Officer Pinto pulled the bag out to discover that crack cocaine was inside it.

<u>ANALYSIS</u>

1)  The *Terry* stop:

The defendant challenges the initial *Terry* stop of his vehicle as being without reasonable suspicion.

The Supreme Court has established that police officers may conduct warrantless investigatory searches without violating the Fourth Amendment where there is a reasonable suspicion of criminal wrongdoing. See *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1964).  This includes the right to stop a moving vehicle, see *United States v. Hensley*, 469 U.S. 221, 226, 105 S.Ct. 675, 678, 680, 83 L.Ed.2d 604 (1984).  Reasonable suspicion is a somewhat abstract standard that "is not readily, or even usefully, reduced to a neat

5

set of legal rules." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (internal citation and quotation marks omitted).  Reasonable suspicion demands "considerably less" than probable cause, but "the police are required to articulate some minimal, objective justification for the stop." *United State v. Mikell*, 102 F.3d 470, 475 (11th Cir.1996).

"While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing *considerably* less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 675-76, 145 L.Ed.2d 570 (2000).

"A reasonable suspicion of criminal activity may be formed by observing exclusively legal activity," *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir.2000), even if such activity is "seemingly innocuous to the ordinary citizen." *United States v. Smith*, 201 F.3d 1317, 1323 (11th Cir.2000).  Officers are allowed to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person."  *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).  A trained, experienced police officer is "able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer." *Brown v. Texas*, 443 U.S. 47, 52 n. 2 (1978) (citations omitted).

The officer, of course, must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.' " *Terry* at 27, 88 S.Ct. at 1883.  "[E]ven ambiguous behavior, susceptible to an innocent interpretation, may give rise to a reasonable suspicion of criminal activity depending on the totality of the circumstances." *Oliver v. Woods*, 209 F.3d 1179, 1188 (10th Cir.2000) (citing *Terry*, 392 U.S. at 22-23, 88 S.Ct. 1868); see also *Terry*, 392

U.S. at 22, 88 S.Ct. 1868 (acknowledging that "a series of acts, each of them perhaps innocent in itself, [may] warrant[ ] further investigation").

"*Terry* accepts the risk that officers may stop innocent people. Indeed, the Fourth Amendment accepts that risk in connection with more drastic police action; persons arrested and detained on probable cause to believe they have committed a crime may turn out to be innocent. The *Terry* stop is a far more minimal intrusion, simply allowing the officer to briefly investigate further." *Illinois v. Wardlow*, 528 U.S. 119, 126, 120 S.Ct. 673, 677, 145 L.Ed.2d 570 (2000).

The presence of baggies can be an important factor in reaching reasonable suspicion. *See United States v. Palen*, 793 F.2d 853, 857-58 (7th Cir. 1986) (presence of plastic wrap and baggies in consensually searched bag amounted to reasonable suspicion to seize defendant's luggage for drug dog inspection where defendant had arrived from a source city for narcotics, fit the drug courier profile, was walking at an abnormal pace, his airline ticket was in an assumed name for which defendant had no plausible explanation, the ticket was one-way, first-class and defendant was in Florida for a relatively short period of time (approximately five days) for a tourist from Alaska).

Courts have found reasonable suspicion where the officers observed a transfer of some sort coupled with other factors.  See *United States v. Crawford,* 2007 WL 1089699 (April 10, 2007 E.D.Ark.), where the court found reasonable suspicion justifying a traffic stop when the officer recognized the defendant as someone with a criminal history and observed "something change hands"  with another individual in a high crime area at night. *Id.* at *1, *4.  In *United States v. Harris*, 188 Fed.Appx. 498, 501 (7th Cir.2006), the Seventh Circuit recognized that an observation of "one person hand something to the other" can lead to reasonable suspicion where

it was coupled with other factors, such as the high crime area, defendant's hasty exit from the scene, and his failure to adhere to the officers' commands to stop. *Id.* at 501-02.  Presence in a high-crime area alone does not justify a *Terry* stop but is relevant when linked with other suspicious facts. *Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

The facts in this case involve parties driving to the end of a dead end street in a high crime area, one driver looking around before approaching the Defendant's vehicle, and a quick transfer of a clear plastic baggie, the kind commonly used in street-level narcotics transactions. This Court finds that this amounted to a "minimal, objective justification for the stop." *United State v. Mikell*, 102 F.3d 470, 475 (11th Cir.1996).

2)      The *Terry* Questions:

The Defendant also asserts that the *Terry* stop questions violated *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The Supreme Court has held "that a routine traffic stop is not a custodial stop requiring the protections of *Miranda*."  *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 124 S.Ct. 2451, 2459, 159 L.Ed.2d 292 (2004), *citing Berkemer v. McCarty*, 468 U.S. 420, 439-40, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984);

In *Berkemer* , the Supreme Court stated:

[T]he usual traffic stop is more analogous to a so-called "*Terry* stop," see *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), than to a formal arrest.  Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to "investigate the circumstances that provoke suspicion." *United States v. Brignoni-Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). "[T]he stop and inquiry must be 'reasonably related in scope to the justification for their initiation.' " *Ibid*. (quoting *Terry v. Ohio, supra*, 392 U.S., at 29, 88 S.Ct., at 1884.) Typically, this means that the officer may ask the detainee a moderate number of questions to determine his

> identity and to try to obtain information confirming or dispelling the officer's suspicions.
> But the detainee is not obliged to respond. And, unless the detainee's answers provide the
> officer with probable cause to arrest him, he must then be released. The comparatively
> nonthreatening character of detentions of this sort explains the absence of any suggestion
> in our opinions that Terry stops are subject to the dictates of Miranda. The similarly
> noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily
> detained pursuant to such stops are not "in custody" for the purposes of *Miranda*.

*Id.*(footnotes omitted). Thus, Officer Pinto's "moderate number of questions to determine his

identity and to try to obtain information confirming or dispelling the officer's suspicions" during

the *Terry* stop did not implicate the Defendant's Fourth Amendment rights. *Id.*

3)      The vehicle search:

A vehicle search will not violate the Fourth Amendment if the vehicle is operational and

"under the totality of the circumstances, 'there is a fair probability that contraband or evidence of

a crime will be found' " in the vehicle. *United States v. Goddard*, 312 F.3d 1360, 1363 (11th

Cir.2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527

(1983)).

Where suspects subjected to *Terry* stops have appeared nervous and officers observed

bags typically containing narcotics, courts have found probable cause to justify warrantless

automobile searches. See *Griffin v. United States*, 4 Fed.Appx. 412, 413 (9th Cir. 2001) (officer

had probable cause to search vehicle suspected of smuggling marijuana across Canadian border;

it was late at night, bags of type used for marijuana smuggling were visible from outside vehicle

and occupant appeared nervous); and *United States v. Rodriguez-Pando*, 841 F.2d 1014, 1017

(10th Cir. 1988) (there was probable cause where officers had received report that drugs were

being transported in area, a second truck, with which suspect was traveling, attempted to evade

officers, suspect was carrying a heavy load and appeared nervous, suspect reached for weapon

when stopped, and officers saw several packages wrapped in fashion often used to wrap cocaine).

In the instant case, in addition to the factors justifying the *Terry* stop, the Defendant was driving a rental vehicle, he appeared abnormally nervous, and he was trying to conceal a baggie, similar to what had been described by Officer Walker and commonly used to hold crack cocaine, under the armrest.  There was probable cause for the automobile search.

Any of the foregoing conclusions of law which may represent findings of fact are adopted as findings of fact.

## RECOMMENDATIONS

For the reasons stated above, this Court RECOMMENDS to the District Court that the Defendant's Motion to Suppress Evidence and Confession (DE 19) be DENIED.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Senior United States District Judge Kenneth L. Ryskamp, within ten (10) days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1)(C).  Failure to file timely objections may limit the scope of appellate review of factual findings contained herein.  See *United States v. Warren*, 687 F.2d 347, 348 (11th Cir.1982) cert. denied, 460 U.S. 1087 (1983).

DONE and SUBMITTED in Chambers at West Palm Beach in the Southern

District of Florida, this 11 day of January, 2009.

_James M. Hopkins_
JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE


Copies to:
Senior United States District Judge Kenneth L. Ryskamp
Counsel of Record

11